The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States in this honorable court. Good morning. We have three appeals we will re-hear this morning. Judge Brasher, as a precautionary measure, is not going to be here in person this morning but is going to participate by audio. So you see his nameplate on the bench and we will hear maybe a question from him. Judge Brasher, are you there? Yes, I'm here. Thank you, Chief Judge Pryor. Can you hear me okay? Yes, we hear you well. After we hear the second appeal this morning, we will take a short break so that Judge Choflat, who was a member of the panel in the third appeal, can join us and then we'll reassemble. I would not expect that to take more than ten, fifteen minutes tops. So, counsel, we're familiar with your cases. We've read your briefs. The authorities cited in your briefs and at least portions of the record in the limited time that is available to you this morning. You should feel free to get straight to the heart of your argument. We're probably going to have some questions but pay attention to the traffic lights. When the red light shines, it is time to end your argument. If you're answering a question from the court, of course, you can finish your answer, but do be mindful of our time. Our first appeal this morning is United States v. Garçon. Mr. Wu. Good morning. May it please the court, Jason Wu on behalf of the United States. At counsel table is AUSA Scott Dion, who litigated this appeal with me. When interpreting a statement, text and context have to work together. That's why, for example, I can get up from a blackjack table without a broken nose, even though I've been telling the dealer to hit me. In this case, Garçon's take on the safety valve creates at least two major problems with 18 U.S.C. 3553 F1's text when read in context. First, he creates huge surplusage in the language, which he can eliminate only by rewriting the rest of the statute. It creates no surplusage. The brief for Garçon makes very clear that you can read two-point and three-point offense as those offenses that would get certain points before the counting rules apply, and the criminal history score is based on the counting rules. No surplusage at all. Chief Judge Pryor, there is surplusage because their view rests on an impossibility, which is the notion that for subparagraphs B and C of the statute, there could be such a thing as a three-point offense or a two-point offense that somehow scores zero points under the criminal history rules. Well, the guidelines don't use that terminology, do they? Those are statutory terms. Those are statutory terms, Your Honor, but by using the three-point and two-point terminology, the statute imports the language of the guidelines, which we also know because the statute says that you have to determine those offenses as determined under the sentencing guidelines, which is the concluding phrase of both subparagraphs B and C. So, again, the notion that there could be a three-point offense for purposes of, say, subparagraph B that scores zero points under the criminal history category rules of the guidelines 4A1.1 and 4A1.2 is internally incoherent. Now— Do we get the surplusage if the plain language of the statute is clear? Do we even get there, the surplusage, as a canon of construction? So I think the reason why we need to look at surplusage, Judge Wilson, is precisely because there are two plausible readings of this statutory language. In essence, as we discuss in our briefs, there's a view that A, B, and C are packaged together as a combination, which is Garçon's view, and the second view is that there's an implied repetition of the verb phrase does not have in the statute, which means that what's being— So you're rewriting it to add those words to each of the subsections? Respectfully, Chief Judge Pryor, we're not— But those words aren't in the subsection, right? Words are in the statute, and by the grammatical structure, we read them to be implicitly repeated. I think it would be akin to if I said, Judge Newsome and Judge Jordan, or Judges Newsome and Jordan, I'm kind of implicitly repeating the word judge, right? Both of the people in that sentence are judges. Let me ask you a question, though. Let's just assume, for purposes of this premise of this question, that you are correct and that it could be read either way. Why doesn't then the rule of lenity require that we read it as straight up and? The reason is that the rule of lenity only kicks in when you have grievous ambiguity, and as the Supreme Court has explained, you only have grievous ambiguity when it remains ambiguous after applying all the traditional tools of statutory interpretation, including cardinal canons of interpretation like the rule against surplusage. And so our point is, although you start— I'm sorry. But it seems like you would still have some surplusage, even if you— Let's say that we apply it the way that you're suggesting, and does not have this, does not have that, and does not have the third thing. Then you have the words prior offense in subparts, well, the second and third parts, but not in the first part. So doesn't that suggest that in the second and third parts, prior offense means something different than just straight up offense in the one-point section? No, Your Honor. So the word prior in parts B and C is an adjective connected to the noun offense. And so it simply refers to, just like many other statutes, an offense, a conviction that occurred before the current prosecution. Why is it different than in the first part where it says just straight up offense? It's because in the first part, subparagraph A already says, and it starts with the language criminal history points. So the phrase criminal history already suggests we're talking about prior offenses. So prior in B and C are a shorthand or replacement for the phrase criminal history in subparagraph A. But criminal history scores can be increased because of your current offense. Precisely right, Judge Pryor. And that's why there's a distinction between subparagraph A referring to points and subparagraphs B and C referring to an offense. While B and C key on having a past offense that scores three or two points under the guidelines counting rules, subparagraph A just looks at what your criminal history score is in your PSI minus, of course, your first four one-point offenses. If I— This is pretty complicated. Getting back to the rule of lenity, in order to accept the government's argument, we would have to conclude that Garcon's interpretation of this statute is not a fair reading of the statute. Can the government seriously contend that their interpretation isn't a fair reading? That is my contention, Judge Wilson, and here's why. Both statutes, if you strip out the actual content of the provision, we acknowledge that this simple form, X does not have ABC, can be read either way. But then when we fill in the contents— Well, but you're papering over an important conjunction, right? It's not X, you know, can be read this way if you have ABC. It's A, B, and C. Sorry, I might have swallowed my word there. I did say— Might have swallowed the key word. Yeah, yeah. Well, to be fair, I meant to say the end, so I'll repeat it. X does not have A, B, and C. That can be read one of two ways. But when you start filling in the contents of that provision— But ordinarily, ordinarily, we read it Garcon's way. Well, Your Honor, in our reply brief, we point to 16 federal statutes— for example, the Senate Drafting Manual. Ordinarily, we read it Garcon's way, don't we? Does not have A, B, and C. We read it as a conjunction, right? It's certainly possible to read it that way, Chief Judge Pryor. But as we point out in our reply brief, there are 16 federal statutes that would make no sense if they were read as invariably creating a combination of features. Like 18 U.S.C. 845 was one of the citations we offered. Seven exceptions in that statute, which are structured in the same format. X does not apply to 1, 2, 3, 4, 5, 6, and 7. So if that had to be a combination every time it shows up in the federal code, that statute would be meaningless. And so here's my suggestion. We acknowledge this is not the way every statute written in this format should be read. But you have to distinguish them based on context, which is why I started there. And you have to decide— This is one of those rare cases where you read the and as an or. And you do so to eliminate the surpluses that you say would otherwise exist. Right? That's the argument, right? Precisely, Your Honor. So that is an alternative argument that we're making, but we are— Why isn't that the easier argument? Even though there are two— He's got a more convoluted one. It's wide open. My attempt to try to simplify things. So there are plenty of cases acknowledging that it's not what you usually do, but there are cases from the Supreme Court and there are cases from this circuit where we and the Supreme Court have read and as an or. It doesn't happen all the time, but it happens some of the time. And in this case, you say, I think, and it seems to me it's the easier position, that this is one of those rare cases because otherwise you create the surplusage. In other words, if you need to show all of them and you show the two-point and the three-point, then it makes the four criminal history points meaningless. Precisely, Judge Jordan. And so maybe this is the way we think about it. Let me try to describe it. Hopefully it's not too convoluted, although I admit with these grammatical concepts, there is some subtlety. There's what we call the several and in our briefs, and that's in Brian Garner's Dictionary of Legal Usage. There's a several and and there's what he calls the inclusive or. And there's a lot of overlap between those concepts. So the inclusive or in Garner essentially says it can be either A or B or both. It means, you know, if I said to you, do you want chocolate or vanilla ice cream? I'm not telling you you have to choose. You can pick both. I'm that generous. But on the other hand, if you use the several and, that means the two concepts either jointly or severally. So if I say, you know, I went to the movies with Jack and Jill, I could mean that I went with them together, the two of them at the same time, or it could mean I went to the movies with Jack on Monday and I went to the movies with Jill on Wednesday. Of course, one of the problems you run into is the presumption of consistent usage. The word and appears elsewhere in the statute. And where it does, you would admit that it means and. And the word or appears elsewhere in this statute. And where it appears, it means or. And so what you're asking us to do is read and in this subsection as meaning something different from how it reads in the rest of the statute. And to mean or, even though Congress used or in other parts of the statute and knew how to do so. I have a few points on that, Chief Judge Pryor. So the reason why we think the canon of consistent usage is particularly weak in this context, there are three reasons. The first is that the canon of consistent usage applies best to statutes that were written at the same time or passed as part of the same act. Here you're talking about some provisions of the safety valve that were passed in 1994 as part of the Violent Crime Control Bill. And this part of the statute, which was passed in 2018, is part of the First Step Act. So that's strike number one. Where does that come from? The different Congresses passed the different subsections. Therefore, the words mean something different in the same section. I've never seen a Supreme Court decision that adopts that rule of construction. Do you have one? So we cited in our brief for that, we cited the Caraco case, Caraco v. Novo Nordis, where Justice Kagan points out that just pointing out different languages in different statutes or different parts of the statute, which were passed, I think she said, years earlier. In the same section? Not in the same section, Your Honor. But I think her point is that when a law is passed years earlier, you shouldn't necessarily assume consistent usage. The second point that's a strike against it is, we're talking about the word and here. And and is a kind of fundamental basic building block word in the English language. And as Justice Souter said in general land dynamics, when you have a word that you can alternate between several different usages in ordinary English speech in a single sentence without generating confusion, there's not much of a presumption of consistent usage. And there's words like this, I would say, and I would say words like of, right? They're very flexible, connecting words that sometimes can mean different things, just literally within the span of two sentences. So what is what is your strongest argument? Is it the superfluous argument or the distributive reading argument? The two work together, Your Honor. So I think the surplusage canon is the single most powerful canon to apply in this case, for a few reasons. But of course, to get there, I think we start with our distributive reading or implied repetition reading. That's our explanation of what this text does. Well, that's how you try to read and as and. Those are really two separate arguments, aren't they? One's an alternative argument. The surplusage argument is really more of the alternative argument because then you run into and meaning or. Your Honor, I think the way they're connected is that what we're trying to show you is that there's two plausible formal ways to read this text. Like if you didn't think about the contents of them, there are two plausible ways. One is the distributive, one is the package reading, what we call Garcon's reading. No matter what your argument is, you are countering Garcon's argument with the saying that that would violate the surplusage canon, correct? Correct, exactly. So yeah, however you configure that. In my mind, I see it as that's the big tiebreaker. Once you have two plausible readings, you need to start applying the traditional tools of statutory interpretation. The very first one you go to in this context is superfluity. Let me ask you one more thing about a concern I would have with Garcon's reading. When the First Act was amended, the mandatory minimums were still in place. They were left intact. It strikes me that Garcon's reading would gut the remaining mandatory minimums because you could have somebody who has, a defendant could have unlimited criminal history points and unlimited prior three-point offense and they would still qualify for safety valve relief as long as they don't have a prior two-point violent offense, right? Absolutely correct, Judge Branch. And that goes to our argument that this statute could not be what Congress reasonably intended. When there are two plausible readings, I think as some of the case law says, there's no canon against using common sense to construe a statute to mean what Congress obviously meant it to mean. Congress couldn't have been that generous. That's what we're supposed to believe. Congress was not that generous in this context because— Could not have been. It would be crazy for them to have been that generous in expanding the safety valve. It would have been, I think, unreasonable for them to say that a person, for instance, with a murder conviction, a three-point capital murder conviction, spends 25 years in jail, gets out, commits a drug crime, that person could somehow be safety valve eligible. It would be unreasonable to believe that a person with multiple serious drug crimes, a lifetime of serious drug crimes, could get out of jail, commit another drug crime, still get safety valve relief. Of course, there are other provisions of the safety valve. We're only talking about these three, but there are other provisions there, right? Of course, Your Honor, that is true. If I could return briefly to surplusage and explain why it applies so powerfully in this context. All the factors that work against consistent usage work in favor of thinking about surplusage in this case. A few reasons. One, it's a huge phrase in the statute that's being eliminated by superfluity. By the way, it's the first subparagraph of the statute. This is not something where Congress tacked on a single item at the end of a lengthy list, where you can understand that might be a synonym or a catch-all just to be precautionary. This is the first subparagraph. And by the way, when Congress added the new paragraph F-1, it contained 49 words. Twenty-two of those words are in subparagraph A. So this would be, I think, a rather unprecedented case of saying that Congress passed a statute, about 45%, nearly 50% of which is utterly meaningless and does no work at all because B and C do all the work in that statute. If there are no further questions, I'll return to... Could I ask a quick question? Yes. So the way I understand Garcon's argument is that the murderer in your hypothetical, the three-point violent felon who committed a violent felony, would be eligible for the safety valve, but a misdemeanor, you know, someone who committed a two-point violent misdemeanor would not be eligible for the safety valve. One, do I understand that to be the implication of Garcon's argument correctly? And two, can you think of any reason, rational basis, any reason at all Congress would have wanted to impose the mandatory minimum on someone who committed a misdemeanor but not someone who committed a felony? Thanks for the question, Judge Brasher. So as to your first part of the question, that is my understanding of Garcon's position. He's free to contradict me if it's not so. And as to the second part of your question, there can be no rational basis for that distinction. And that's why we point out in our briefs, although Garcon claims that subparagraph C targets violent offenders, it utterly fails to do so if it only targets moderately serious two-point violent offenders. That means the people with the worst crimes, the ones most indicative of recidivism or their danger to the community, are eligible for a reduced sentence under this provision. And not only eligible for a reduced sentence, they're going to get a break under the guidelines as well because their offense level is going to be reduced. Do you think that is constitutional, if Congress were to do that, if Congress were to actually pass a law that said we want to impose the highest sentences on those who have committed misdemeanors and lower sentences on those who have committed felonies? I don't know that it's unconstitutional, Your Honor. It strikes me as a bit arbitrary and I think therefore unreasonable, and I doubt we would see such a statute, and Congress did not pass such a statute here. But I can't think of a constitutional impediment to it. Well, the court also retains the authority to decline to apply the safety valve relief, even if you qualify for it, all right? That's correct, Judge Wilson, but the harm here and the issue is that you create sentencing disparity in treatment even by giving judges discretion as to a certain universe of cases and withholding it in others. Because remember, this provision does not only open up the gate of discretion, it also reduces the offender's offense level and it gives them a big break, a pretty significant break on their guidelines. So it's very arbitrary that murderers could get that and moderately violent offenders could not. Thank you. We've let you go over two and a half minutes, but you were answering questions. We'll now hear from Ms. Dreisbel. Thank you, Chief Judge Pryor. May it please the court, Tracey Dreisbel, Assistant Federal Public Defender, on behalf of Julian Garcon. If Congress wanted the statute to work the way the government suggests, it would have used the word or. What it did instead was structure the statute as a conjunctive negative proof. The exact example is at page 120 of Scalia and Garner's Reading Law. The interpretation of the safety valve as a conjunctive negative proof is consistent with the presumptive meaning of the word and in legislative drafting as well as the Congress's multiple other uses of both the words and and or throughout the safety valve. Can I ask you a quick question? So is your position really that Congress, in fact, meant to package up these three conditions for eligibility or instead, whatever Congress meant, this is the statute it wrote? Your Honor, we only know what Congress wrote. We don't know what Congress meant, but there are valid reasons why Congress would have looked at these three conditions separately and the fact that they may not work artfully together in all circumstances is not enough to justify overlooking the plain meaning of the statute. But here's my concern about that. It seems to me fairly clear from a common sense reading of the statute that Congress intended that you had to have all three and here's why. Let's say you have a defendant who has ten three-point violent offenses, but no two-point violent offenses. Under a strict and literal reading of the statute, that person would qualify for the safety valve, right? Correct. I mean, and then you have a defendant who has a simple two-point violent offense, maybe within the furthest back you could have it, a three-point offense that is nonviolent, who doesn't qualify. I mean, especially because when the one thing that does seem clear is that Congress, when it amended the statute, it intended for nonviolent offenders or relatively nonviolent offenders to be able to take advantage of the safety valve. But in the example I've given, where you have a defendant who has been convicted of a number of violent crimes, that defendant would still be eligible. It just seems to me not to make common sense. So, Your Honor, I think that based on the very strong textual interpretation of the statute, in order for this court to find that that was not what Congress intended, we would have to go to the threshold of absurdity. And even if this is an elegant result, it is not absurd. We know this was a compromise legislation. We know there were many different interest groups involved. There may have been a reason why some interest group was particularly concerned with a two-point violent offense. Why would you go to absurdity? Heaven forbid we talk about legislative history, but let me go into those waters. There is nothing, nothing in the legislative record or drafting history to indicate that Congress was going to take such a big step from where the safety valve was before to where you say it is now. And you would fix a lot, maybe not all, but a lot of the problems that Judge Rosenbaum articulated if you make the word and read as or. Because then you would think that Congress did this. We're going to expand safety valve. It used to be you had to have, I think it was at the very beginning, one criminal history point and that's it. Very few number of offenders got safety valve. Okay, so now we're going to increase one to four points. So now people who don't have four criminal history points are eligible. But those are for really minor offenders. If you have a violent two-point offense, we don't want those individuals to get it. And if you don't have a two-point violent offense, but you've got a three-point offense, which is generally a felony offense, we don't want those people to get it either. So if you think of it in those terms, it makes perfect sense. But of course, I understand the problem. The problem is you have to read and as or. But it takes away a lot of the issues that Judge Rosenbaum mentioned. But again, those are policy arguments. And all we can look at are the words on the page. There is nothing in the legislative history. They're not policy arguments completely because everyone is trying to make sense of what Congress wrote. And you were trying to explain, and we interrupted you, but you were trying to explain why it might make sense to have someone with seven three-point felony convictions, someone who has been in jail for 25 years, let's say, get safety valve. What is that reason? The reason is that the criminal history provision is only one-fifth of the safety valve. And it made perfect sense for Congress in a package of statutes, which was the First Step Act, ameliorating and lessening mandatory minimums. It made perfect sense for Congress to make a policy decision that the prohibitions in F2, 3, 4, and the cooperation requirement in F5 were more important, and that the discretion could be given back to the district court unless a defendant had all three of these particularly disqualified... So this is Judge Brasher from probably, like, the ceiling or something in the courtroom. Can you answer the question, why would Congress deny safety valve to the two-point misdemeanor person? That's my hang-up, is... I think you're right. Congress could have said even murderers can be eligible for safety valve. But then why flip and say, but if you commit a misdemeanor trespass, you're ineligible for safety valve? How does that make sense? And is that so arbitrary as it would be an unconstitutional sentence if it were actually imposed? Your Honor, I would point the court to the Terry case that came out of this court and went to the Supreme Court last term. Terry involves Section 404 of the First Step Act, which is the same section we're talking about here, and it only granted relief to more serious crack cocaine offenders. The people who were not sentenced to a mandatory minimum under 841B1C were not eligible for relief. A unanimous Supreme Court affirmed this court's decision, but Justice Sotomayor wrote a concurrence saying there was no rational reason for Congress to have excluded the least serious offenders or, in Terry's case, a career offender who simply wasn't sentenced to a mandatory minimum. Even the bipartisan sponsors of the bill had written an amicus brief asking the Supreme Court to expand relief, and Justice Sotomayor wrote the text simply would not allow it. And so I would just suggest this is the same thing here. There is nothing... Okay, well, laws have to have a rational basis, I guess, or they're unconstitutional. So, I mean, what is the... I mean, I can think of lots of rational bases in that context for Congress to say we want to lower the sentences on the high end but not change the sentences on the low end. What is the rational basis for Congress saying if you commit a misdemeanor, you have a higher sentence than someone who has committed felonies? That's what I'm struggling with. And to be clear, it's not necessarily the misdemeanor-felony distinction, right? It is the 60 days versus 13 months. As I mentioned, there could have been a rational basis. There could have been a belief that somebody who perhaps a youthful offender frequently gets shorter sentence and continued to offend. There could have been an interest group that was particularly concerned with domestic violence. The fact remains that we don't know, and this isn't sufficient to meet the standard of absurdity, particularly in light of the structure of the remaining statute. If I... How do you respond to the argument about superfluidity? In other words, if you have to meet all three but you meet the second two, the first one becomes irrelevant, right? Despite Chief Judge Pryor... Well, I think Chief Judge Pryor understood the argument we made in our briefs. Now, as the court pointed out in its briefing order... Tell me why. Why that's so? I have a reason and an example. Okay. So the reason is, as the court pointed out in the briefing order, Congress used its own language in the first step back. It talks about a one-point offense, a two-point violent offense, and a three-point offense. Those terms are not defined anywhere, either in the statute or the guidelines. It is up to us, it is up to this court, to determine what those terms mean. And based on the structure of 3553F1A, you can see that Congress used the terms points and offenses differently. They said no more than four criminal history points, excluding points resulting from a one-point offense. If points and offenses were the same thing, they would have just said excluding one-point offenses or not counting one-point offenses. They drew a distinction between points and offenses. That's the only way to make sense of A. I agree. I agree, Chief Judge. And that is consistent with the way the guidelines work, because if you go to Chapter 4, the very first section of Chapter 4, 4A1.1, assigns points based on the sentence of imprisonment, and you don't get into... a criminal history score until 4A1.2. So it is consistent with the guidelines to interpret points and offenses as different things. And I will give you another example of a way that a defendant can have... But how can you get points without an offense? You can't, but you can have an offense without points. Okay? That's the point. So you're going to consider scorable points that weren't scored? You're considering the offense for the points that aren't scored, and this happens all the time under the single-sentence rule. If you're a district judge working with this stuff, that makes no sense. I would point the court to the single-sentence rule. I mean, you're in an illusory world of point counting. You're like, oh, we're talking about points, but those are points that were never really points, because they weren't scored. But in F1A, points is the noun. Points is what the court has defined. It has defined the noun as points. In F1B and C, the noun, the object that the court has defined is the prior offense. The one point, two point, and three point are simply descriptors. So let's, for example, under the single-sentence rule, if you have a defendant that is charged on a drug crime, he is in custody, and this happens all the time. Then in the state, another charge is going to come up. To use my domestic violence example, his girlfriend comes in, and he gets charged with an aggravated battery. If they are consolidated or sentenced in the state court and sentenced at the state time, he gets 13 months on the drugs, six months on the aggravated battery. He is then going to have a three-point offense and a two-point violent offense, but under the operation of the single-sentence rule, and 4B1.2, I believe, B2, or 4A1.2B2, those are going to count as a single sentence of imprisonment. So he's only going to get three points at sentencing. He's actually going to get another point based on a little special rule for crimes of violence under the single-sentence rule, but he's still going to have only four points at sentencing. And so in that situation... You have to know from sentences, generally, how many points are involved for any particular offense before, under the guidelines, you decide whether they're counted. Isn't that right? I think that's absolutely correct, and particularly since this is a natural language moniker. There is no definition of what's a one-point or a two-point or a three-point offense. That's not how the guidelines work. In practice, we always look at the guidelines first and say how many points it is before we start counting what counts for what purposes. So the way Congress wrote this is entirely consistent with the way points are calculated in practice. It just seems a little bit odd that Congress would have selected this specific combination of offenses. But let's say the person had, instead of a three-point offense and a two-point violent offense, they had a three-point violent offense and multiple nonviolent two-point offenses and maybe additional violent three-point offenses. I mean, that person would qualify under the reading that you're given, and it doesn't seem to me like the other parts of the safety valve, unless the person was a manager or organizer or there was violent crime involved in the offense of sentencing, which, of course, you know... Unless that was basically the situation and the person didn't, you know, disclose information, then the person would be eligible for the safety valve. I mean, it doesn't... I don't really understand why Congress would select that specific combination when there are other combinations that are so much more violent that would then qualify. That's the part I'm having trouble with. Now, having said that, I still do think that there are good arguments on both sides, enough so that it may be ambiguous enough that the rule of lenity applies, but I just... I have trouble understanding, from a common-sense point of view, the argument. Go ahead. My response to that would simply be that it just doesn't rise to the level of legal absurdity, and that's really our position here. It may be odd in certain cases to give courts discretion in that situation and not discretion in others, but it's not absurd. But let's take your client. Yes, Your Honor. Is it odd in your client's situation? My client had more than one prior three-point offense. I believe one of them was even violent, but he had three criminal history points. And after the district court judge, a very well-respected senior district court judge, took a recess during the sentencing to review the statute and came back, decided that it had the discretion and safety valve applied, the government continued to ask for five years, which would have been the mandatory minimum, the judge could have given him up to 40 years, and determined, based on the nonviolent nature of the offense, the relatively low amount of cocaine involved, and my client's cooperation with the government, that a three-year sentence was appropriate. That is not absurd. Now, I would say, if the court does believe it's absurd... You know, we haven't talked about the Ninth Circuit yet. They read a two-point to include a three-point, which is not the plain language of the statute, but it is also a natural reading. But if you're going to... I mean, if you're going to... If you're going to make the argument based on the text, then I think you have to make the argument based on the text. And that seems a little... And that's the argument that we've stayed in the brief. I would just say, if the court thinks it's absurd, that is one way around absurdity, particularly because we're talking about a natural language reading. I don't think it is absurd. And if I can just spend a few moments... I'm running low. I haven't gone through all of the textual factors. Of course, that question is really not presented. It's not in our briefs, Your Honor. Correct. We have taken the position that the text means what the text means. And it is... No, but my point about what the Ninth Circuit said about the meaning of the three-point or the two-point violent offense, that's really not presented in this case, is it? No, Your Honor, because Mr. Garçon doesn't have a two-point offense. So it's not presented in this case. So I just want to spend a few moments... Before you go on, I have a question about your interpretation of 4A1.1. The commentary says that 4A1.1 and 4A1.2 must be read together. Is your interpretation consistent with that commentary? I think it is. And for one, I mean, this is a congressional statute that was written after that commentary. The commentary can't control Congress. But we need both of those provisions in order to make our definition work because you go to 4A1.1 to determine what is a one-point, two-point, and three-point offense based on the sentence of imprisonment. And then you go to 4A1.2 to determine whether or not they're going to count. And 4A1.2 is also where the commission, the sentencing commission, uses the word offenses multiple times to refer to offenses that may or may not be included in your criminal history score. So both provisions of the commentary are consistent with our interpretation. I want to point out, going back just to the text, and again, even if the court thinks it's an odd result, in a lot of these absurdity cases that the government cite, the court says it's not absurd and the text simply will not bend to their argument. And this is why the text can't bend here. You've got multiple uses of the words or in F2, F3, and F4. That is the disjunctive negative proof that the government would like it to be. No violence or credible threats or threats of violence or possess a firearm. In F4, Congress has used the and-not formulation. The defendant was not a leader or organizer and was not engaged in a continuing criminal enterprise. So those are two ways if Congress had wanted the statute to work the way the government says, they would have done it. Another way the court could have done it, or the government, the Congress could have done it, was that they could have used an introductory phrase such as none of the following. And they in fact did that in another section, Section 101 of the First Step Act. What's your response to the numerous and statutes cited by the government, just that those are different for various reasons? They're all different for the same reason, Your Honor, because all 19 of them or 16 of them are statutes of exclusion from a definition or a law, and they all include an introductory phrase that explains how they're to work. Scalia and Garner talk about this at page 122 of Reading Law, that you can have an introductory phrase on a variant of it. None of the statutes the government cited is a conjunctive negative proof. If you must not have A, B, and C, you must not have them as a package. At page 119, Scalia and Garner make clear that even after a negative, and is still conjunctive. And that is why the government's whole theory doesn't work. That conjunctive negative proof is not a canon of construction mentioned anywhere else in the literature. And the one case that tries to apply it, Scalia and Garner think they got it wrong. Well, that was actually a conjunctive disjunctive proof, and the Third Circuit actually recognized that they weren't applying the logical rules that would have applied, they were following precedent. It's simply, I think it was in Sotomayor's opinion in Facebook. It's based on a logical proof. We're going to start interpreting language based on logical proofs? Based on logic and common sense, Your Honor. And that's what the conjunctive negative proof is. It's really a wild idea that we would interpret the word and to mean and, and that we would assume that it's going to be read according to logic, right? That's correct, Your Honor. Let me go back to one point. The subparagraph A, I want to make sure I understand. Everyone understands this. The criminal history points and the excluding one point offense, right? Yes. That proves, does it not, that Congress is using the point offense terminology in a different way from scoring rules, doesn't it? Correct, Your Honor. Points resulting from the offense. They're drawing daylight between what is a point and what is an offense. My time is running out, if I may, in closing. Again, if Congress wanted the statute to work the way the government says, there are multiple clearer and more familiar ways it would have done so. There is no reason to believe Congress sought to achieve the same result through an unorthodox and confusion-inducing construction involving an M-dash. We ask the Court to follow Scalia and Garner and apply the words on the page and affirm the sentencing decision of the district court. Thank you, Ms. Dreisbach. Mr. Wu, you've saved five minutes. Thank you. Let me start with the notion . . . Why don't we start with subparagraph A and that distinction between scoring and how much an offense is worth in terms of points? Yes. That proves their point, doesn't it? It does not, Your Honor, and here's why. Subparagraph A says you just have to look at the criminal history points total. The way you do that is you go to the PSI, you look at their criminal history points total, and you subtract out the one-point offense. You've got to exclude the one-point offense. Correct. It understands that as something different from scoring. No, Your Honor. The reason why they use points at the start is because you can earn points, as you yourself noted, for your current offense. That's why it's not tied to a specific past offense. And it's a total, so it can be accumulated through more than one offense, as it often is. That's all that subparagraph A means. When you get to subparagraphs B and C, you're instead discussing a single past offense in the defendant's criminal history that scores three or two points. Now, I want to focus on the guidelines here because there's a very subtle rewriting that Garçon attempted to accomplish today. He claims, in essence, that 4A1.1 defines the terms three-point and two-point, and then 4A1.2 kind of gives you some clarifying rules that says, certain three-pointers count and certain three-pointers don't count. But let's look at the language of the guidelines. 4A1.1, all the sections, they do not say a three-point sentence of imprisonment is defined as blank. They say add three points for blank. That's a counting rule for the sentence. They're a counting rule, precisely. And then 4A1.2. Don't use the word offense.  And then 4A1.2. Well, I'll explain that in a second. But then 4A1.2 says don't count offenses that are older than 15 years old. Don't count foreign offenses. Don't count juvenile offenses. Don't count certain military tribunal offenses. Recognizing that you could have already attributed certain points, but now you don't count those. Well, the two verbs directly contradict each other. So, in essence, they have to be read together. You add three points for offenses, but you don't count, meaning you don't add those points when they are a foreign sentence, when they are older than 15 years old. And that's why even Note 1 to 4A1.1 of the guidelines says offenses older than 15 years old or sentences older than 15 years old do not count. Now let me discuss why is the word offense in BNC. That's why B and C say, like A, say as determined under the sentencing guidelines. Because you've got to go through each analytical step to see if a prior offense or conviction is scorable. Precisely, Judge Jordan. And let me also explain why the word offense instead of the word point is BNC. Does it use scorable in BNC? So the word offense in BNC key you into a single crime of conviction. So here's the distinction we draw. There's a possibility of having a three-point sentence of imprisonment that's composed of two shorter consecutive sentences. Imagine a 10-month sentence plus a 10-month sentence for two offenses that are sentenced at the same time, single judgment in state court. Neither of those are a three-point offense. That's why they use the word offense. They want you to find a single offense that had a sentence of more than 13 months. That is why B and C use the word offense. That is why A uses the word points. When there are multiple offenses at a single sentencing, then you only count them as one, right? Correct. But the guidelines recognize that they're separate offenses. The guidelines do recognize they're separate offenses. But, for instance, let me turn to the hypothetical that my opponent offered this morning where you have a sentence that's more than 13 months composed of a nonviolent offense with a longer sentence. And then I think the example was a six-month aggravated assault. Her view was that that six-month aggravated assault is almost like a two-point violent offense embedded in the single sentence of imprisonment. But, as she herself noted, there is a different rule of the guidelines for a 1.1e, which says that when you have an embedded crime of violence, it counts for one point under the guidelines. So it is not a two-point violent offense as determined under the sentencing guidelines. There is a specific rule that tells you it is, in fact, a one-point violent offense under the sentencing guidelines. So I think, again, the position that Garçon takes always requires you to kind of selectively pick and choose which parts of the guidelines that you're applying as you go down these different subparagraphs. And where is that in the text? Where is it at the end of B and C that says, as determined under the sentencing guidelines, except certain selective parts of 4a.1.2, which, quite frankly, I still cannot discern standing here which ones count and which ones don't. Is it just the timing rules? Is it the point conviction rules? It's a grievous ambiguity. No, Your Honor. It's not, because once you simply apply the guidelines as written, you understand that a three-point offense and a two-point offense are those that score three points or two points in your criminal history calculation under the guidelines. At that point, all that you're left with is a massive superfluity problem in Garçon's reading of the guidelines, which this Court can correct in one of two ways. One, it can accept the government's distributive reading of the text, which, as we've shown, there are 16 examples of federal statutes that look very similar. So it belongs in that family. Or, alternatively, as Judge Johnson... She's right. None of those involve the negative proof, isn't she? Not one of those 16. I think they are essentially the same. I don't accept that, because they use a negative verb. So they say, do not apply or do not include. That's essentially the same phrasing as the verb do not have. I think those are very, very close cognates. So I don't quite understand why... But they're not the same. They are not the same, that is true. But, again, in Scalia and Garner, I think the verbs used is like must not or something like that. So, you know, they acknowledge that there can be subtleties, like different verbs that are used in that phrasing, that they still attribute the same meaning to. If there are no further questions... Oh. Okay, if there are no further questions, we urge this Court to reverse and remand for resentencing without the safety valve. Thank you for your time. Thank you, Mr. Wu.